Good morning, Your Honors. May it please the Court, Mark Rifkin of Wolf Haldenstein on behalf of the plaintiffs in Appalachia. I'd like to reserve four minutes for rebuttal, if I may. Certainly. I'll try to help you out, but please keep track of your time as well. And I'll do my best as well, Your Honor. Thank you. This is the plaintiff's second appeal from a decision of the district court in this case, which concerns Apple's undisclosed and unprecedented agreement with AT&T Mobility to force iPhone customers to use AT&T as the exclusive carrier for voice and data service for their cellular phones, not just during the initial service period for the phone, but also thereafter. The monopolization of iPhone voice and data service was enforced by technological features that Apple built into the phones, making it impossible for anyone who owned an iPhone to obtain voice and data service from any carrier other than AT&T. In exchange for which, Apple received a 30 percent share of AT&T's revenue from iPhone voice and data service, also an unprecedented and undisclosed arrangement between a cell phone maker and a wireless service provider. This case involves a single product, the iPhone, sold in the primary market, and a single aftermarket product, iPhone voice and data service, which was sold by a single carrier, AT&T Mobility, to all direct purchasers at a single non-negotiated price. All of those facts make this case particularly well suited for class certification and will serve to distinguish from those cases where perhaps class certification presented challenges that simply are not present here. The plaintiffs commenced this action in 2011. They withstood a motion to dismiss on the basis that AT&T wasn't necessary. I'm sorry for interrupting you. Of course. Your time is short. Yes. And we're familiar with the procedural history, extended procedural history of this case. Let's get to the district court's stated reason for denial of certification, and that is that the declaration was insufficient because it didn't have sufficient data to back up the model that was discussed. And in the district court's words, the expert's declaration is devoid of any analysis. What the court said exactly on page five of its decision is that Dr. Warren Bolton's declaration is essentially lacking any data-driven analysis, and that's where we think the district court committed error. The court did not, and I want to emphasize this, the court did not conduct the kind of rigorous analysis of Dr. Warren Bolton's opinion expressed either in his original declaration or in his supplemental declaration that the court is required to conduct. Instead, it simply looked for math. And finding no mathematical equation populated with data and with a result, the court concluded that it was impossible for Dr. Warren Bolton to meet the burden, the plaintiff's burden to show that common issues predominate over any individual issues. Counsel, I think that's maybe a little bit unfair to the district court. The court didn't say you had to have math necessarily, but I read the court as saying you have to show that you're actually going to be able to prove damages on a class-wide basis. And an expert who says, and I think it's on page 137, I do not expect to encounter any insurmountable difficulty, if the best he can come up with is, yeah, I've got this, I'm going to be able to do it, but doesn't actually show how he would do it. Why isn't it within the court's discretion to say that that's not enough? Well, we agree, Your Honor, that that wouldn't be enough, except that's not entirely what Dr. Warren Bolton did. He described two different assumptions that he would try to use to determine both impact and damages. In one world, one but-for world, which he called the truthfully exclusive world or the TE world, he said Apple and AT&T would continue to make AT&T the exclusive provider for iPhone voice and data service, but would be compelled to tell the truth about doing so. So then instead of being foist upon consumers unknowingly, consumers would know about the choice, or the absence of choice, I should say. The other but-for world that Dr. Warren Bolton described is what he called the truthfully non-exclusive world, in which being forced to tell the truth about the arrangement, the exclusive arrangement, Apple and AT&T would abandon it, and instead AT&T would have been non-exclusive. Can I ask, before you get into those two methods, why didn't he or you say which of those you would use? Because they seem like pretty different theories of what the injury is. They are, and at trial it may be that the evidence will support one conclusion or another conclusion. At the time when Dr. Warren Bolton rendered his opinion, we didn't know, and today we still don't know, because we have not had enough discovery to be able to make that determination, whether we will be able to prove it's more likely than not that Apple would have continued to insist on exclusivity, or Apple would have abandoned it. Given the importance of the iPhone and its exclusivity to both, we think it more likely that it would be truthfully exclusive, but if Apple and AT&T were compelled to tell the truth, it's entirely possible that they could not have maintained the exclusivity arrangement. So we had, and I think Dr. Warren Bolton carefully considered both but-for worlds, and he had a methodology that he described in his declaration, which was completely ignored by the district court, to assess both impact and damages in either of the two but-for worlds. If we think that one of the theories would, you know, with respect to one of the theories he adequately showed that he could do it on a class-wide basis and with respect to the other he didn't, what would be the right result? Then the right result would be to instruct the court to certify a class with respect to that theory and not permit the court-not permit the class to proceed on the alternative theory. I don't think it's necessary for the court to do this because Dr. Warren Bolton describes how he would approach damages in either case. And what he says is in the truth- The right result to remand for the district court to conduct the rigorous analysis as to whether predominance has been met because that hasn't been done yet. Well, I think that that is correct. The district court should in the first instance make that determination, but the district court should be told in no uncertain terms that it is not enough simply to say, which is all the district court said. The district court only addressed this issue in a single sentence in its short decision. It says, Dr. Warren Bolton's declaration is essentially lacking any data-driven analysis. And that's the basis for her conclusion that common issues in this case could not predominate. This court has never required such a data-driven analysis in order to demonstrate either impact or damages. The question of whether common issues predominate over individual issues is one that is inherently tied to the nature of both the product and the alleged antitrust violation. For example, if this were a product that were sold not at a single price nationally, but instead at negotiated prices where there were differences in the prices that were paid by various consumers, it might be that the kind of data-driven analysis that the district court was looking for would be necessary in order for an expert like Dr. Warren Bolton to separate out the effect of the monopolization from other factors such as, for example, the ability of a large purchaser to negotiate a more favorable price than a smaller purchaser. But here there was no evidence that there was any difference in the prices that were paid by anyone for iPhone voice and data service in the aftermarket. Your Honor, you look like you have a question. I mean, I guess you keep saying that, I mean, you're correctly quoting the sentence from the district court's opinion that refers to data-driven analysis, but that's not the only thing the district court said. And it went on to say, you know, that you don't have any, failed to submit any semblance of a functioning model. So I guess the concern that I think was animating the district court is what is the limit on the ability of a plaintiff to get class certification if all they have to say is come in and say, you know, we don't have the data, we don't have a model, but here's an expert who says he's confident he could come up with a model. And that's where the rubber meets the road, and that's what I'd like to address. Thank you for asking the question. What Dr. Warren Bolton said is, and I'd like to start with a truthfully non-exclusive world because conceptually it's a little bit easier. Essentially, Apple would have to make iPhones in such a way that they could be used on any available wireless network so that consumers would have choice. And what he says is, he says, in the truthfully non-exclusive world, I would apply a benchmark analysis using the price for voice and data service that was charged by T-Mobile, the most close competitor to AT&T. And he says this in his declaration, and what he says is, he says, this is essentially the kind of analysis that was undertaken by the plaintiff's expert in the first iPhone case, which we call Apple One, by Simon Wilkie. And Dr. Wilkie conducted a study, and he used the data that was available to him then, and he determined that there was a deviation in the price for iPhone voice and data service that AT&T was charging compared to the price for voice and data service that T-Mobile was charging. Before the iPhone was introduced, T-Mobile and AT&T charged essentially the same price for wireless service. After that, T-Mobile dropped its price considerably. AT&T maintained the high price. And Dr. Wilkie in Apple One said, this is an indication of the impact of the iPhone on the price that consumers paid for iPhone voice and data service. And what Dr. Warren Bolton says is, I believe that the same data and the same analysis, albeit for a different time period, because Your Honors know that in denying the motion for summary judgment on the class definition, Judge Gonzalez-Rogers changed the parameters of the class a bit. She said that the class period would only be after the expiration of the initial two-year period. So Dr. Warren Bolton needed to address that change to the parameters of the case. And he says, using the same kind of data that Dr. Wilkie collected in Apple One and applying the same kind of benchmark analysis, I will be able to calculate the impact for all class members, all of whom paid the exact same rate for their iPhone voice and data service. In the truthfully exclusive world, the TE world, Dr. Warren Bolton says, once I complete that analysis, I will then discount that price differential back to the date of the purchase of the initial iPhone. Because in the truthfully exclusive world, the TE world, he says that damage in the differential paid by consumers for voice and data service is felt in the total cost of ownership, which included the purchase price for the phone. And so he says, in either case, my starting methodology is with the benchmark analysis, which is a widely accepted methodology. No one here has criticized it. There isn't data to allow it to be done. No one here has said that it isn't a valid method for determining both impact and damages in an antitrust case. The criticism here was, you didn't do it. You haven't done it yet. And this court has not required that the work that the expert says will be done, must be done in order to obtain class certification. And so we believe that the flaw in the district court's analysis is that, in fact, the district court looked for the analysis to have been completed, rather than listening to the expert who explained in paragraph after paragraph, not only in his initial declaration, but also in his supplemental declaration, which the court never even cited and never even discussed. Rather than consider in a detailed analysis of the proposal that Dr. Warren Bolton laid out, the court simply says, I don't see the math, and therefore it can't be met. And that's the error that we believe the district court committed. And if the court were to reverse and remain with instructions, we would expect the district court to follow the law that we've described in the briefs. I have gone way over my time, but thank you. Thank you. Good morning, Your Honors. May it please the court. Josh Rosenkranz, representing Apple. Your Honors, plaintiffs have only themselves to blame for the predicament that they're in now. After the district court judge narrowed the case drastically on summary judgment, she repeatedly warned plaintiffs not to come back to her with the same showing on antitrust impact that they had presented years before to Judge Ware. She said, you've got to give me something new and different because this is a different case now. Either plaintiffs couldn't find impact on the new theory, or they couldn't bother trying. So now, 10 years into this case, and just a mere six months before a scheduled trial, they submit an 11-page declaration that was totally devoid of substance. Their expert repeatedly confirmed that he did not yet have a model. He just kept repeating the mantra that Judge Miller mentioned, quote, I do not expect to encounter any insurmountable difficulty in developing a model. That's not a model. That's, to Judge Miller's point, I got this. The district court was right to ask during oral argument, the answer is absolutely not. This was plaintiff's burden. The Supreme Court... Now, had the plaintiffs attached to their expert declaration, Dr. Wilkie's declaration, instead of just merely referencing it and attaching it in support of their motion, would that have made a difference? No, Your Honor. Dr. Wilkie's declaration, first of all, was flawed for all the reasons that we presented both in our brief to this court and to the district court. But most importantly, it doesn't get you anywhere near the model, the theories that plaintiffs are articulating. So, for example, this is not just about taking a period that was once five years and making it a different four-year period. This is about taking a model that was on an entirely different antitrust theory. It was on the theory that the moment you bought an iPhone, there was an anti-competitive monopolization of the market for your ability to transfer to T-Mobile. And so Dr. Wilkie, in his own flawed way, developed this valuation of that decision that you make here and now as to whether you can go to T-Mobile. What happens now is we're talking about an aftermarket that is two years away. And there is nothing in Dr. Wilkie's analysis that helps you figure out how does a customer, how do you value what a customer may or may not be deciding two years down the line and to the TE model, nothing that explains how you take that number that he's averaged out And that's a good point. I think that's an argument that should be made to the district court in terms of whether using T-Mobile service prices is appropriate as a benchmark. The problem that I struggle with in this case is in reviewing the district court's analysis as to why predominance is not satisfied, the district court essentially said, I can't fulfill my duty to conduct the rigorous analysis because there's no common methodology for assessing class-wide proof. It's just basically there's no data-driven model here so there's really nothing for me to really sink the court's teeth into and determine whether theories tied in as is required under Comcast to the theory of legal liability. That analysis is entirely absent from the district court's analysis. So my question is, in looking at Dr. Wilkie's declaration, is there a common methodology of assessing class-wide damages or not? And if that is a common methodology, then I would want to see the district court explain why it's deficient. We haven't even gotten to that. So your arguments regarding deficiency of the methodology, to me, is a bit beside the point because I don't know if the district court would agree or disagree with your analysis. Well, Your Honor, so I will address in a moment some of the details, but let me just go to the big picture. The district court had literally no analysis for this very exotic theory that you can take a price on the aftermarket or take a value on the aftermarket two years down the line and translate it into a price differential that Apple, a non-monopolist, was going to change its price now. I was saying that's an exotic position. My point here is that Dr. Warren Bolton did not even describe how you can get from here to there. All he said, it's really just one page on TE, all he said was I will develop a model. It's not that hard to do. But there's a huge amount of work that is completely missing and it can't be wrong for the district court to say, wait a minute, you're translating this model into that. You've given me nothing. That can't be an abuse of discretion. I've got nothing on which to conduct a rigorous analysis. You're not letting me do my job. What the district judge required here was nothing extraordinary. It's not like she adopted a bright line rule that you need a regression analysis in every antitrust case, nor even that you need an economic model in every antitrust case. She just said on these facts, you said that you are going to prove your antitrust impact with an economic model. Fine. I'd like to see what that model is so I can do my job. The circuits all agree that that is what is supposed to happen. This was plaintiff's burden to show that they had a sound methodology, not just a theory for how you would go about doing it. And if this court declares that it was an abuse of discretion for the district court to reject plaintiff's bare bones hypothesis, it will be, to Judge Miller's point, a roadmap for an end run around the requirement to show antitrust injury with class-wide proof. Under plaintiff's view here, in all of those cases, from Comcast to the First Circuit's case in Assacolle or the D.C. Circuit's two cases in rail freight, all of the plaintiffs there just made a stupid mistake. They should never have presented a model at all. They should have just written an 11-page declaration saying that my opinion is, as a smart economist, X result should occur with Y under Y economic principles. My opinion, for example, in Comcast is that the price differential really is accounted for by the antitrust violation. I don't have a model yet, and that is what Dr. Warren Bolton said about the TE theory. I don't have a model yet, but, quote, I do not expect to encounter any insurmountable difficulty. We're essentially saying, oh, I don't have a model that's developed yet, but I'm going to rely on Dr. Wilkie's model. And so that's why I started by asking, would it make any difference if Dr. Wilkie's, if she had, for example, cut and pasted the relevant portions of Dr. Wilkie's analysis and inserted it into her declaration? Would the district court then have a common methodology to at least engage in and reject? The answer is no, Your Honor. It's not just a matter of the failure to cut and paste. So let's do TE, for example, which is the model that plaintiffs are saying that they're really pressing. There's just not enough to know how they are going to make those two steps of translation from Dr. Wilkie's model into the current theory of antitrust liability. So Dr. Warren Bolton says he's going to figure out how much everyone would have liked the option to switch to T-Mobile at year two, then figure out how they would value that option today, and then show that somehow this value would have moved to the primary market for iPhones, resulting in price decreases. Okay, so Judge Gonzalez-Rogers was right to say, how are you going to do that? With what evidence are you going to show those two steps? We don't know. How is he going to show how consumers value that renewal market two years before it occurs? Does he have surveys? Does he have benchmarks? Is there any data anywhere that sheds light on this? This is something Dr. Wilkie couldn't help him with. We also don't know how he's going to decide which consumers are relevant in figuring out how the market pressures would result. And we also don't know, Dr. Warren Bolton gives us nothing to get a handle on, how Apple would react to any market pressures. Bear in mind, this is a world in which Apple was charging in that period $99, $199, and $299. It was not fluctuating prices by 50 cents or $5 here and there, depending upon varied consumers' expectations. Dr. Warren Bolton had to give the district court the goods to explain to the district court how he's going to make all of those leaps in order for the district court to do her job. And that is what the district court was saying. I will just also add, so on the TE model, the critical flaw was the failure to provide, excuse me, the TE theory. The critical flaw was the failure to provide any meat on the bones of how you make these two steps. But even on the T and E model, this court can affirm also simply on the basis of plaintiffs' failure to sustain their burden. The whole premise of the T and E theory is that everyone who buys an iPhone or an iPad is injured simply by losing the value of the option to turn to T-Mobile. That is two years down the line. But there is a huge problem with that. There is an enormous class of uninjured, subclass of uninjured parties. It is undisputed that there are millions of parties who did not renew and they were never going to renew. They just put their phones in drawers or they upgraded and got a different phone. They have no injury because they didn't need or didn't want the option. Dr. Warren Bolton leaves that entirely out of his analysis. It's one of the reasons that the district court was saying it is devoid of analysis. Can I ask on that last point? How do you reconcile your position with our line of cases like most prominently Pulaski and Middleman and say that that sort of individualized variation and whether you have damage or how much damage there is within the class doesn't defeat certification? Your Honor, there is a critical difference between this case and those cases. In the cases that you are talking about, you mentioned Pulaski, there is Leyva, there is Lambert. Plaintiffs are citing those cases and those cases stand for the proposition that differences in damages calculations, that is individual differences from one plaintiff to another, do not necessarily foreclose predominance. But this case is not about individual calculation of damages. It is about the core element of liability. Was there harm at all and was the harm proven on a class-wide basis? In every one of the cases plaintiffs cite, and Pulaski is a great example, the plaintiffs there had established every element of the cause of action to prove liability. Impact, antitrust impact, is an element that is not satisfied here. Under whatever statute was at issue in those cases, plaintiffs have shown, plaintiffs had shown in those cases that there was an injury. So you mentioned Pulaski. This Court conducted an extensive analysis of the injury and it held that the plaintiffs had suffered an injury under California law, that was the unfair competition law, because they were all subjected to the same practice. That was a uniqueness of California law. Only then did the Court consider this question of individualized damages. I'll give you another example. LABA, it was a wage and hour class action. Injury was clear. Everyone was underpaid. The only question was individualized questions about liability, about how much they should be paid, which is wages, times, hours. That is true of Lambert and it's true of Just Film as well. This case is different because plaintiffs have to prove that everyone was injured. And the way they said that they would prove that everyone was injured was with an economic model. They had to demonstrate the model. So let me just close with this and I'll circle back where I started. The way the district court exercised its discretion was a consequence of the choices that plaintiffs made. This was their burden. They had ten years to come up with a viable model of antitrust impact. They chose to ignore the district court's repeated warnings. And I urge the Court to look at page 145 and page 109 of the excerpts of record, where the district court says to counsel, this is not going to work, you've got to come back with something better. Instead, they did worse. They chose to address the critical theory that plaintiffs are talking about here in literally a page that said, I will have a model, I got this. That is simply not good enough and it can't be an abuse of discretion for the district court to say, you need to give me the goods in order for me to do a rigorous analysis. If there are no further questions, we respectfully request that the Court affirm. Thank you, counsel. Your Honor, in the short time I have remaining, I'd like to correct a couple of comments first. I don't know anything about $99 iPhones or $129 iPhones or $299 iPhones. What the plaintiffs allege in the complaint is that during the relevant time period, iPhones were sold for either $499 or $599. I'm referring to paragraph 17 of the complaint, which appears on page 225 of the record. As for the plaintiffs changing their theory of the case, that's just simply legal hyperbole. There's nothing at all that changed about the theory of the case. The only thing that changed is the Court's definition of the class. And that happened well into the litigation during the motion for summary judgment on the class definition. And the Court rejected the same factual arguments that Apple wants to make here about consumers having agreed and consumers maybe not having agreed and what they knew and what they didn't know. The Court found that all of those questions were disputed questions of fact to be resolved at trial. The Court, however, did say that your class is limited to the period after the initial two-year period, which is exactly what Dr. Warren Bolton addresses in his two declarations. I think, Your Honors, I think the issue here is that there is no analysis of what Dr. Warren Bolton says. There's only a conclusion from what he doesn't say. And what he doesn't say, frankly, isn't the end of the story. The Court needed to analyze what he did say, how he did propose to compute the damages, not just the theoretical models, that is, the but-for models, but also the proposal of using a benchmark. Counsel for Apple said there is no proposal to use a benchmark. That's exactly what the Court ignored. But if you look at paragraphs 21 and 26 and 24 of Dr. Warren Bolton's original declaration, you will see that he says exactly that. He says exactly how he's going to compute the damages. And with respect to the evidence that Dr. Wilkie presented, I remind the Court that Dr. Wilkie's declaration and his analysis was accepted by then-Chief Judge Ware as adequate to demonstrate impact and damages for purposes of certification when Chief Judge Ware granted. Thank you, Your Honor.
judges: Nguyen, Vitaliano, Miller